TAYLOR *et al.*, Respondents, v. WIMER, Appellant.

1. In order to make a sheriff responsible for a failure to levy an execution, it must be shown that he had knowledge of property owned by the execution debtor subject to execution, and on which he could make the levy, or a knowledge of such facts as should cause him to make exertions to find the property.

*Appeal from St. Louis Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*A. M. & S. H. Gardner*, for appellant.

I. The court erred in finding that the attorney of plaintiffs directed defendant to levy the execution on goods and merchandise "in the store of Nelson Chamblin." It does not appear that Chamblin had any interest in the goods in the store pointed out. So also in finding that there was "sufficient" merchandise "belonging" to Chamblin to satisfy the execution. There was no evidence whatever as to the value

of the goods ; and it was too slight to justify the finding that they belonged to Chamblin.  The finding is inconsistent ; by finding that Chamblin was insolvent, the court negatived conclusively the allegation that plaintiffs lost their debt by defendant's neglect.

*Knox & Kellogg*, for respondents.

I. It was the duty of the officer either to levy the execution or give some good reason for not levying it.  In this case defendant gave assurance to Mr. Dick that he would make the levy, but neglected to do so.  The fact that there was an older execution in defendant's hands is no excuse for neglecting to levy as directed.  The execution may have been fraudulent, and was so, as Mr. Dick testifies he had been informed.  It does not appear but that the merchandise upon which defendant was directed to levy was sufficient to satisfy all the creditors of Chamblin.

EWING, Judge, delivered the opinion of the court.

This was an action against the sheriff of St. Louis county for failing to execute a writ of *fieri facias*, in which the plaintiffs claimed three hundred and sixty-five dollars and twenty-eight cents and interest, the amount of an execution against one Nelson Chamblin, which they allege was lost to them by reason of the failure of the defendant to levy said execution, and which the petitioner avers the defendant was requested to levy on the goods and effects of said Chamblin, which he neglected to do ; and that the same was delivered to his successor, who returned the execution *nulla bona.*

The answer denies that the plaintiffs ever requested the defendant to levy on any property of Chamblin, or that they ever designated any property of his on which he could make a levy ; or had knowledge of any property belonging to said Chamblin.  It further alleges that there were older judgments and executions to which any money coming into his hands would have been applicable, and denies generally any failure or neglect of duty on his part.  The cause was tried

by the court sitting as a jury, and a judgment rendered for plaintiffs for four hundred and seventy dollars and sixty-nine cents. The appellant filed a motion for review, which was overruled, and the only question for our determination is whether the evidence supports the finding of facts by the court below.

The evidence is that a witness of plaintiffs, F. A. Dick, Esq., their attorney, in the spring of 1854, told the defendant that Chamblin had a stock of goods in his store on the corner of Second and Market streets, and desired him to secure the debt by making a levy. Wimer replied he knew it himself and that it would be all right, and should be attended to. The witness did not go with the respondent to the place, nor offer to go, but was ready to do so, and witness' impression was that a levy would be made. At the time of this conversation the witness did not know of his own knowledge that there was any property at the place named belonging to the said Chamblin, or that he had property of any kind subject to levy under execution. Witness stated his impression was that the goods in the store were covered by a fraudulent execution of about four thousand dollars, though there were executions on older judgments in defendant's hands at the time; could not say that he ever saw Chamblin in possession of the store at the place named; thought he had seen him in the store a year or more before he brought the suit. He urged Maddox, defendant's successor, to levy on the same store, but he refused without a bond, which witness would not give. Stevens, a witness, said he knew the store referred to and saw Chamblin in it at different times in 1854. There was a good stock of goods in it, but did not know who was the owner. Several persons in the store did not know whether Chamblin was clerk, agent or principal; never saw Chamblin at the store after April, 1854. W. C. Jamison, witness for defendant, stated that he obtained a judgment against Chamblin, October 23, 1854, and an execution was in the hands of the sheriff in the spring of 1854, on which no money was made; made inquiries for prop-

Taylor v. Wimer.

erty, but did not direct a levy, and did not know that any-
thing could be made on the execution. The appellant then
offered in evidence an execution in favor of Little & Olcott
against Chamblin, on an older judgment, which was in the
hands of the defendant as sheriff at the time the plaintiff's
execution was, which was excluded and exceptions saved.
This execution was for four thousand five hundred dollars,
and dated April 28, 1854.

The finding of the court is as follows: That the plaintiffs
were partners; that said John M. Wimer had in his pos-
session as sheriff an execution in favor of said plaintiffs
against Nelson Chamblin, in the spring and summer of the
year 1854; that the attorney of the plaintiff directed said
Wimer to levy said execution on the goods and merchan-
dise in the store of the said Nelson Chamblin, on the corner
of Second and Market streets, in the city of St. Louis; that
when said order was given there was sufficient merchandise
in said store belonging to said Chamblin to satisfy said execu-
tion; that said Wimer neglected to levy said execution, and
that in consequence of said neglect plaintiffs have lost their
debt against said Chamblin, who is insolvent. Upon which
finding a judgment was rendered.

This suit is for alleged breach of duty in failing to levy the
execution according to law, and if there was any failure of
duty it consisted in not levying the writ on the property of
the respondents. If they had property when the execution
was placed in the hands of the sheriff, which he could have
found by the exercise of reasonable diligence, it was his duty
to levy it, and failing in this, he became liable. But his lia-
bility must depend upon the establishment of the fact, by
positive or circumstantial evidence, that he had knowledge
of property owned by the execution debtor, subject to execu-
tion, and on which he could make the levy, or a know-
ledge of such facts as should cause him to make exer-
tions to find the property. (1 J. J. Marshall, 553.) Pos-
session of personal property being *prima facie* evidence of
ownership, wherever it is shown that the sheriff had know-

ledge that the defendant in the execution was possessed of personal property and he fails to levy upon it, the burden of proof falls upon him to show that the property was not subject to execution. We think the evidence does not support the finding of the court, as to the facts, namely, that plaintiffs directed the defendant to levy the execution on the goods *in the store of Chamblin*, and that there was *sufficient* merchandise in the store *belonging* to him to satisfy the execution. There was no evidence as to whom the store belonged, or even who had it in possession. Chamblin was seen with others in the store, but whether he or some one of the others owned it or had the possession does not appear. There is a like want of evidence as to the ownership of the goods; no witness testifies to this point. Mr. Dick says he did not know whether Chamblin had any property subject to execution or not, or that there was any property at the store belonging to him. As to the *quantity* or *value* of goods there is no evidence whatever.

The court also finds that Chamblin was *insolvent*. If this was so, then the same evidence that established the fact of insolvency also established the fact that Chamblin had no property subject to plaintiffs' execution, and there was nothing upon which to base the finding that the respondents lost their debt by the neglect of the appellant; for the evidence of Chamblin's insolvency related to the time at which the respondent's execution was in the hands of appellant.

Judgment reversed and the cause remanded ; Judge Scott concurring. Judge Napton absent.